IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **ROBERT JAMES SKEENS,** | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. 2:14cv00008 |
| | ) | **MEMORANDUM OPINION** |
| **CAROLYN W. COLVIN,** | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Robert James Skeens, ("Skeens"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the

-1-

case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Skeens protectively filed his applications for SSI and DIB on February 28, 2011, alleging disability as of November 1, 2007, due to degenerative disc disease of the lower back, arthritis, a bulging disc, a broken hand, a back injury and high blood pressure. (Record, ("R."), at 214-15, 221-23, 239, 243.) The claims were denied initially and upon reconsideration. (R. at 131-33, 138-40, 144, 147-49, 151-53.) Skeens then requested a hearing before an administrative law judge, ("ALJ"). (R. at 155-56.) A hearing was held on November 9, 2012, at which Skeens was represented by counsel. (R. at 35-78.)

By decision dated November 16, 2012, the ALJ denied Skeens's claims. (R. at 12-22.) The ALJ found that Skeens met the disability insured status requirements of the Act for DIB purposes through December 31, 2012. (R. at 14.) The ALJ found that Skeens had not engaged in substantial gainful activity since November 1, 2007, the alleged onset date. (R. at 14.) The ALJ found that the medical evidence established that Skeens had severe impairments, namely mild degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the knees, right greater than left; chronic obstructive pulmonary disease; status-post fracture of the small finger of the right dominant hand, healed; hypertension; and unspecified anxiety and depression, but the ALJ found that Skeens did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-15.) The ALJ found that Skeens had the residual functional capacity to perform sedentary work.[1] (R. at 18.) Specifically, the ALJ determined

---
[1] Sedentary work involves lifting no more than 10 pounds at a time and occasional lifting or carrying items like docket files, ledgers and small tools. Although a sedentary job is defined as

-2-

that Skeens could lift and carry items weighing up to 10 pounds occasionally and up to five pounds frequently; sit for six hours out of an eight-hour workday; stand and/or walk for two hours out of an eight-hour workday with the opportunity for in-place position shifts between sitting and standing as needed; occasional balancing, stooping, crouching, crawling and climbing of ramps and stairs; no kneeling; no constant handling with the right hand; and avoid exposure to respiratory irritants, gases and extreme cold temperatures. (R. at 18.) The ALJ further determined that Skeens could understand, remember and carry out simple instructions, make judgments on simple work-related decisions, deal with changes in a routine work setting, respond appropriately to supervision, co-workers and usual work situations and read and write short, simple words. (R. at 18-19.) The ALJ found that Skeens was not able to perform any of his past relevant work. (R. at 20.) Based on Skeens's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Skeens could perform, including jobs as a materials handler and a general production worker. (R. at 20-21.) Thus, the ALJ concluded that Skeens was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 21-22.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2014).

After the ALJ issued his decision, Skeens pursued his administrative appeals, (R. at 7, 354), but the Appeals Council denied his request for review. (R. at 1-4.) Skeens then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2014). This case is before this court on Skeens's motion for

---

one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2014).

summary judgment filed August 29, 2014, and the Commissioner's motion for summary judgment filed November 3, 2014.

## II. *Facts and Analysis*[2]

Skeens was born in 1969, (R. at 214, 221), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Although Skeens reported on his Disability Report that he completed the ninth-grade, (R. at 244), his school records show that he completed only through the eighth grade. (R. at 347.) He has past work experience as a concrete laborer, a carpenter, a press operator and a tree cutter. (R. at 74, 244.)

Vocational expert, Robert Jackson, testified at Skeens's hearing. (R. at 74-77.) Jackson was asked to consider a hypothetical individual of Skeens's age, education and work experience, who could perform unskilled light work[3] with only occasional climbing, kneeling, crouching and stooping, that did not require constant handling and fingering with the right dominant hand and who could read and write only short, small words. (R. at 75.) Jackson identified jobs that existed in significant numbers in the national or regional economy that such an individual could perform, including jobs as a parking lot attendant and an inspector/grader. (R. at 75.) Jackson was asked to consider the same hypothetical individual, but who would be limited to performing sedentary work that required in-place

---

[2] In his brief, Skeens does not challenge the Commissioner's residual functional capacity finding. Instead, Skeens challenges the jobs identified by the vocational expert at step five of the sequential evaluation process. (Plaintiff's Brief In Support of Motion For Summary Judgment, ("Plaintiff's Brief"), at 9-13.) Therefore, the court will limit its recitation of the facts to the administrative hearing testimony.

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2014).

positions shifts, that did not require kneeling, that required only occasional postural movements such as climbing, crouching and stooping, that did not require constant handling or fingering with the right dominant hand, that did not require concentrated exposure to respiratory irritants, such as dust, fumes, odors and gases and that did not require work around extreme cold. (R. at 75-76.) Jackson stated that there would be jobs available that existed in significant numbers, including jobs as a materials handler and a general production worker. (R. at 76.) He stated that there would be no jobs available if the individual was limited as indicated by the assessment of nurse practitioner Moore. (R. at 76-77.) Jackson also stated that there would be no jobs available that the hypothetical individual could perform should he be absent from work more than two or more days a month or if he had to take several unscheduled breaks throughout the day. (R. at 77.)

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2014). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2014).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that

-5-

the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Skeens argues that the ALJ erred in relying on the vocational expert's testimony because that testimony conflicted with information in the Dictionary of Occupational Titles, ("DOT"). (Plaintiff's Brief at 9-13.) He further argues that the ALJ included more specific limitations in the decision than the limitations in the hypothetical question posed to the vocational expert. (Plaintiff's Brief at 10.)

The ALJ found that Skeens had the residual functional capacity to perform sedentary work. (R. at 18.) Specifically, the ALJ determined that Skeens could lift and carry items weighing up to 10 pounds occasionally and up to five pounds frequently; sit for six hours out of an eight-hour workday; stand and/or walk for two hours out of an eight-hour workday with the opportunity for in-place position shifts between sitting and standing as needed; occasional balancing, stooping, crouching, crawling and climbing of ramps and stairs; no kneeling; no constant handling with the right hand; and avoid exposure to respiratory irritants, gases and extreme cold temperatures. (R. at 18.) The ALJ further determined that Skeens could understand, remember and carry out simple instructions, make judgments on simple work-related decisions, deal with changes in a routine work setting, respond appropriately to supervision, co-workers and usual work situations and read and write short, simple words. (R. at 18-19.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Skeens argues that the ALJ erred by failing to ask the vocational expert whether his testimony conflicted with the DOT and, if so, whether there was a reasonable explanation for the conflict. I agree. Social Security Ruling 00-4p instructs, in part, the following:

> This Ruling clarifies our standards for the use of vocational experts [] who provide evidence at hearings before administrative law judges … In particular, this ruling emphasizes that before relying on [vocational expert] evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] and information in the Dictionary of Occupational Titles (DOT) … and Explain in the determination or decision how any conflict that has been identified was resolved.
>
> . . .
>
> Occupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert's] evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part

of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

. . .

When a [vocational expert] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert's] evidence and information provided in the DOT.

In these situations, the adjudicator will:

> Ask the [vocational expert] if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the [vocational expert's] evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

S.S.R. 00-4p, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings (West Supp. 2013).

In this case, the ALJ failed to ask the vocational expert if the evidence he provided conflicted with information in the DOT. Under the Commissioner's own ruling, the ALJ is under an affirmative duty to inquire into conflicts between the vocational expert's testimony and the DOT. *See Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999) ("We hold that before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point."); *see also Oxendine v. Massanari*, 181 F. Supp. 2d 570, 573-75 (E.D.N.C. 2001) (concluding that the

Fourth Circuit has adopted the rule set out in *Haddock,* noted *supra*, therefore adopting SSR 00-4p).

In this case, the ALJ found that the vocational expert's testimony was consistent with the DOT, with the exception of the option for position shifts. (R. at 21.) The ALJ also noted that this finding was based on the vocational expert's "experience in the field." (R. at 21.) However, a review of the hearing transcript shows that the ALJ failed to first "inquire, on the record, as to whether or not there is such consistency," and he failed to elicit a reasonable explanation for the conflict before relying on the vocational expert's testimony to support a determination or decision about disability as required by Social Security Ruling 00-4p. The ALJ, therefore, erred by not asking the vocational expert if the evidence he provided conflicted with information in the DOT and, thus, he was unable to adequately provide a reason for this conflicting information.

Based on the above-stated reasons, I find that substantial evidence does not support the ALJ's decision denying benefits. I will deny both motions for summary judgment, vacate the decision denying benefits and remand Skeens's claims to the Commissioner for further development. An appropriate order and judgment will be entered.

DATED: April 13, 2015.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE